

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

*Sammi Malek*
*Assistant United States Attorney*

*970 Broad Street, 7th floor*
*Newark, New Jersey 07102*

*973-645-2700*

SM/PL AGR
2017R00138

December 11, 2024

Michael Baldassare, Esq.
Charles Kennedy, Esq.
Baldassare & Mara, LLC
570 Broad Street, Suite 900
Newark, NJ 07102

  Re: <u>Plea Agreement with Thomas Padovano</u>

Dear Counsel:

  This letter sets forth the plea agreement between your client, THOMAS PADOVANO, and the United States Attorney for the District of New Jersey and the United States Department of Justice, Money Laundering and Asset Recovery Section (collectively, the "Government") and supersedes all previous offers. This offer will expire **by close of business on December 13, 2024** if it is not accepted in writing by that date. If THOMAS PADOVANO does not accept this plea agreement, his sentencing exposure could increase beyond what is discussed in this plea agreement as a result of the Government's investigation.

<u>Charges</u>

  Conditioned on the understandings specified below, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the Government will accept a guilty plea from THOMAS PADOVANO to **Counts One** and **Three** of the Third Superseding Indictment, Crim No. 19-390 (SDW), Doc. No. 127, which charges THOMAS PADOVANO: (1) in **Count One**, with knowingly and intentionally conspiring and agreeing with others to distribute and possess with intent to distribute controlled substance analogues, as defined in Title 21, United States Code, Section 802(32), intended for human consumption, as provided in Title 21, United States Code, Section 813, and controlled substances, including: (a) 100 grams or more of a mixture and substance containing a detectible amount of 4-fluoroisobutyryl fentanyl (also known by names such as "4-FIBF," "FIBF," and

"para-fluoroisobutyryl fentanyl"), a Schedule I controlled substance analogue until May 3, 2017, and a Schedule I controlled substance thereafter, contrary to Title 21, United States Code, Sections 802(32), 813, 841(a)(1), and 841(b)(1)(A); (b) 100 grams or more of a mixture and substance containing a detectible amount of furanyl fentanyl ("FUF"), a Schedule I controlled substance analogue until November 29, 2016, and a Schedule I controlled substance thereafter, contrary to Title 21, United States Code, Sections 802(32), 813, 841(a)(1), and 841(b)(1)(A); (c) a mixture and substance containing a detectible amount of methylone, a Schedule I controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); (d) a mixture and substance containing a detectible amount of 3,4-Methylenedioxymethamphetamine (also known by names such as "MDMA," "ecstasy," and "Molly") and its controlled substance analogues, all Schedule I controlled substances, contrary to Title 21, United States Code, Sections 802(32), 813, 841(a)(1), and 841(b)(1)(C); and (e) a mixture and substance containing a detectible amount of ketamine, a Schedule III controlled substance, contrary to Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(E), all in violation of Title 21, United States Code, Section 846; and (2) in **Count Three**, with conspiracy to launder monetary instruments, domestic concealment money laundering, contrary to Title 18, United States Code, Section 1956(a)(1)(B)(i), in violation of Title 18, United States Code, Section 1956(h).

If THOMAS PADOVANO enters a guilty plea and is sentenced to a total term of imprisonment within the range of **168 to 234** months on Counts One and Three, subject to any applicable statutory mandatory minimum term of imprisonment, at least **five years** of supervised release on Count One, and no more than **three years** of supervised release on Count Three (the "Stipulated Range"), and otherwise fully complies with this agreement, the Government will not initiate any further criminal charges against THOMAS PADOVANO for conduct known to the Government related to narcotics trafficking, domestic and international money laundering, and conspiracy to commit the same between January 2014 and November 2024. In addition, if THOMAS PADOVANO fully complies with this agreement, at sentencing, the Government will move to dismiss Count Two of the Third Superseding Indictment against THOMAS PADOVANO.

But if a guilty plea in this matter is not entered for any reason or a guilty plea or judgment of conviction entered in accordance with this agreement does not remain in full force and effect, the Government may reinstate any dismissed charges and initiate any other charges against THOMAS PADOVANO even if the applicable statute of limitations period for those charges expires after THOMAS

PADOVANO signs this agreement, and THOMAS PADOVANO agrees not to assert that any such charges are time-barred.

If the Court rejects this plea agreement, THOMAS PADOVANO may withdraw his guilty plea. Whether or not he does, if the Court rejects this plea agreement, the Government may withdraw from it. If the Court defers a decision to accept the plea agreement until the Court has reviewed the presentence report pursuant to Rule 11(c)(3)(A), THOMAS PADOVANO will not move to withdraw his guilty plea unless and until the Court rejects the plea agreement.

Additionally, the Government will abide by this agreement conditioned on the entrance, and acceptance by the Court, of a guilty plea by Bartholomew Padovano, who was charged as THOMAS PADOVANO's co-defendant in the Third Superseding Indictment.

Sentencing

The violation of Title 21, United States Code, Section 846 to which THOMAS PADOVANO agrees to plead guilty in Count One of the Third Superseding Indictment carries a statutory mandatory minimum prison sentence of 10 years and a maximum prison sentence of life, and a statutory maximum fine equal to the greatest of: (1) $10,000,000; or (2) twice the gross profits or other proceeds to THOMAS PADOVANO.

The violation of Title 18, United States Code, Section 1956(h) to which THOMAS PADOVANO agrees to plead guilty in Count Three of the Third Superseding Indictment carries a statutory maximum prison sentence of twenty years, and a statutory maximum fine equal to the greatest of: (1) $500,000; or (2) twice the value of the property involved in the transaction.

The prison sentences on Counts One and Three may run consecutively to each other or to any prison sentence THOMAS PADOVANO is serving or is ordered to serve. Fines imposed by the sentencing judge may be subject to the payment of interest.

Pursuant to Rule 11(c)(1)(C), the Government and THOMAS PADOVANO agree that a sentence within the Stipulated Range is the appropriate disposition of the case. Accordingly, if the Court accepts this plea agreement, the Court must sentence THOMAS PADOVANO to a total term of imprisonment of at least **168** and

no more than **234** months and at least **five** years' supervised release on Count One, and no more than **three** years' supervised release on Count Three.

Further, in addition to imposing any other penalty on THOMAS PADOVANO, the sentencing judge as part of the sentence:

(1)    will order THOMAS PADOVANO to pay an assessment of $100 per count ($200 here) pursuant to 18 U.S.C. § 3013, which assessment must be paid by the date of sentencing;

(2)    may order THOMAS PADOVANO to pay restitution pursuant to 18 U.S.C. § 3663 *et seq.*;

(3)    must order forfeiture, pursuant to 21 U.S.C. § 853 and 18 U.S.C. § 982(a)(1);

(4)    may deny THOMAS PADOVANO certain statutorily defined benefits, pursuant to 21 U.S.C. §§ 862 and 862a; and

(5)    if THOMAS PADOVANO violates any of the conditions of supervised release before the expiration of its term, THOMAS PADOVANO may be sentenced to not more than **five** years' imprisonment on Count One and not more than **two** years' imprisonment on Count Three in addition to any prison term previously imposed, regardless of the statutory maximum term of imprisonment set forth above and without credit for time previously served on post-release supervision, and may be sentenced to an additional term of supervised release.

<u>Forfeiture</u>

As part of THOMAS PADOVANO's acceptance of responsibility and pursuant to 21 U.S.C. § 853, THOMAS PADOVANO agrees to forfeit to the United States all property constituting or derived from proceeds THOMAS PADOVANO obtained, directly or indirectly, as the result of the violation charged in **Count One** of the Third Superseding Indictment, and all of THOMAS PADOVANO's right, title, and interest in any property that was used or intended to be used, in any manner or part, to commit, and to facilitate the commission of, the violation charged in **Count One** of the Third Superseding Indictment.

In addition, pursuant to 18 U.S.C. § 982(a)(1), THOMAS PADOVANO agrees to forfeit to the United States all property, real or personal, involved in the money

laundering offense charged in **Count Three** of the Third Superseding Indictment, and all property traceable to such property.

THOMAS PADOVANO further agrees that the value of the proceeds he obtained as a result of the offense charged in **Count One**, and therefore the property subject to forfeiture for **Count One**, was at least $300,000; that the value of the property involved in, and therefore, subject to forfeiture for **Count Three** was $300,000; that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists; and that the United States is therefore entitled to forfeit substitute assets equal to the aggregate value of the proceeds obtained as a result of the conspiracy charged in **Count One** and the property involved in the money laundering offense charged in **Count Three** of the Third Superseding Indictment, which equals an amount not to exceed **$300,000** (the "Money Judgment"). THOMAS PADOVANO consents to the entry of an order requiring him to pay the Money Judgment, in the manner described below (the "Order"), and that the Order will be final as to THOMAS PADOVANO prior to sentencing, pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, and which may be satisfied in whole or in part with substitute assets.

All payments made in full or partial satisfaction of the Money Judgment shall be made by postal money order, bank, or certified check, made payable in this instance to the U.S. Customs and Border Protection Agency, indicating THOMAS PADOVANO's full name and case number on the face of the check; and shall be delivered by mail to the United States Attorney's Office, District of New Jersey, Attn: Asset Recovery and Money Laundering Unit, 970 Broad Street, 7th Floor, Newark, New Jersey 07102. THOMAS PADOVANO further agrees that the United States Attorney's Office is authorized to conduct any discovery needed to identify, locate, or dispose of property sufficient to pay the Money Judgment in full or in connection with any petitions filed with regard to proceeds or substitute assets, including depositions, interrogatories, and requests for production of documents, and the issuance of subpoenas.

THOMAS PADOVANO further agrees to forfeit all of his right, title, and interest in the property located at **708 East Front Street, Building 3, Unit 5, Plainfield, NJ 07062**, and which THOMAS PADOVANO admits has the requisite nexus to the money laundering offense charged in Count Three of the Third Superseding Indictment (the "Specific Property") and is therefore forfeitable to the United States of America pursuant to 21 U.S.C. § 853. Any forfeited money and the

- 5 -

net proceeds from the sale of forfeited specific property will be applied to the Money Judgment, in partial satisfaction thereof.

THOMAS PADOVANO agrees that he shall market and sell the Specific Property, with the sale closing to take place within 90 days of the execution of this plea agreement. THOMAS PADOVANO agrees that the first $300,000 of net proceeds from the sale of the Specific Property will be held in escrow in the attorney escrow account of the undersigned defense counsel, and thereafter will be paid towards the Money Judgment in accordance with instructions provided by the Government. THOMAS PADOVANO agrees that if there are less than $300,000 of net proceeds from the sale of the Specific Property, he will still owe any deficiency under his Money Judgment.

THOMAS PADOVANO must sell the Specific Property for a reasonable market price, subject to approval by the United States. With respect to the sale of the Specific Property, THOMAS PADOVANO agrees that he shall not be related in any way, financially or otherwise, to any listing agent, broker, or closing agent, or receive any benefit in any way, financially or otherwise, from any listing agent, broker, or closing agent. THOMAS PADOVANO agrees to execute, and have the prospective buyer of the Specific Property execute, an affidavit of arms' length transaction, in a form approved by the Government. Before accepting an offer to buy the Specific Property, THOMAS PADOVANO shall provide the Government with the affidavits of arms' length transaction and the proposed contract for sale.

Until the Specific Property is sold, THOMAS PADOVANO shall not commit, nor allow any act to be done, to diminish the value of the Specific Property. THOMAS PADOVANO further agrees that he shall continue to be responsible for all real property taxes, liens, and other claims and encumbrances against the Specific Property.

If the Specific Property is not sold so that closing takes place within 90 days of the execution of this plea agreement, THOMAS PADOVANO agrees that the Government may forfeit the Specific Property at its sole discretion. Additionally, THOMAS PADOVANO hereby consents to the entry of an order for the interlocutory sale of the Specific Property, pursuant to Rule 32.2(b)(7) of the Federal Rules of Criminal Procedure and Supplemental Rule G(7) of the Federal Rules of Civil Procedure. In the event the Government forfeits and sells the Specific Property, the Government agrees to return to THOMAS PADOVANO any surplus over $300,000 from the net sale proceeds.

THOMAS PADOVANO waives the requirements of Rules 32.2 and 43(a) of the Federal Rules of Criminal Procedure regarding notice of the forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. THOMAS PADOVANO understands that criminal forfeiture is part of the sentence that may be imposed in this case and waives any failure by the court to advise him of this pursuant to Rule 11(b)(1)(J) of the Federal Rules of Criminal Procedure at the guilty plea proceeding. THOMAS PADOVANO waives any and all constitutional, statutory, and other challenges to the forfeiture on any and all grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment. It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture.

THOMAS PADOVANO further agrees that not later than the date he enters his plea of guilty he will provide a complete and accurate Financial Disclosure Statement on the form provided by the Government. If THOMAS PADOVANO fails to provide a complete and accurate Financial Disclosure Statement by the date he enters his plea of guilty, or if the Government determines that THOMAS PADOVANO has intentionally failed to disclose assets on his Financial Disclosure Statement, THOMAS PADOVANO agrees that that failure constitutes a material breach of this agreement, and the Government reserves the right, regardless of any agreement or stipulation that might otherwise apply, to oppose any downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, and to seek leave of the Court to withdraw from this agreement or seek other relief.

Rights of the Government Regarding Sentencing

Except as otherwise provided in this agreement, the Government may take any position with respect to the appropriate sentence to be imposed on THOMAS PADOVANO by the sentencing judge. The Government may also correct any misstatements relating to the sentencing proceedings and provide the sentencing judge and the United States Probation Office all law and information relevant to sentencing, favorable or otherwise. And the Government may inform the sentencing judge and the United States Probation Office of: (1) this agreement; and (2) the full nature and extent of THOMAS PADOVANO's activities and relevant conduct with respect to this case.

<u>Stipulations</u>

The Government and THOMAS PADOVANO will stipulate at sentencing to the statements set forth in the attached Schedule A, which is part of this plea agreement. The stipulations in Schedule A are offered as recommendations to the Court pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The parties understand that the sentencing judge and the United States Probation Office are not bound by those stipulations and may make independent factual findings and may reject any or all of the parties' stipulations. Nor do these stipulations restrict the parties' rights to respond to questions from the Court and to correct misinformation that has been provided to the Court.

This agreement to stipulate on the part of the Government is based on the information and evidence that the Government possesses as of the date of this agreement. Thus, if the Government obtains or receives additional evidence or information prior to sentencing that it believes materially conflicts with a Schedule A stipulation, that stipulation shall no longer bind the Government. A determination that a Schedule A stipulation is not binding shall not release the parties from any other portion of this agreement, including any other Schedule A stipulation.

If the sentencing court rejects a Schedule A stipulation, the parties reserve the right to argue on appeal or at post-sentencing proceedings that the sentencing court did so properly. Finally, to the extent that the parties do not stipulate to a particular fact or legal conclusion in this agreement, each reserves the right to argue how that fact or conclusion should affect the sentence.

<u>Waiver of Appeal and Post-Sentencing Rights</u>

If the Court imposes a sentence within the Stipulated Range, neither party will appeal that sentence. In addition, except as specified in the next paragraph below, and in exchange for the concessions the Government made in entering into this plea agreement, THOMAS PADOVANO will not challenge by any means his conviction or any component of his sentence. The term "any means" includes a direct appeal under 18 U.S.C. § 3742 or 28 U.S.C. § 1291, a motion to vacate the sentence under 28 U.S.C. § 2255, a motion to reduce the term of imprisonment under 18 U.S.C. § 3582(c)(1) or (c)(2), a motion for early termination of supervised release under 18 U.S.C. § 3583(e)(1), and any other appeal, motion, petition, or writ, however captioned, that seeks to attack or modify any component of the sentence.

The parties reserve the right to file or to oppose any appeal, collateral attack, writ or motion not barred by the preceding paragraph or any other provision of this plea agreement. Moreover, the preceding paragraph does not apply to:

(1)     Any proceeding to revoke the term of supervised release.

(2)     A motion to reduce the term of imprisonment under 18 U.S.C. § 3582(c)(1)(A).

(3)     An appeal from the denial of a § 3582(c)(1)(A) motion on the grounds that the court erred in finding no extraordinary and compelling circumstances warranting a reduced term of imprisonment or that the court failed to consider those circumstances as a discretionary matter under the applicable factors of 18 U.S.C. § 3553(a).

(4)     Any claim THOMAS PADOVANO pursues in an appropriate forum, when permitted by law, that THOMAS PADOVANO received constitutionally ineffective assistance of counsel.

Immigration Consequences

THOMAS PADOVANO understands that, if THOMAS PADOVANO is not a citizen of the United States, THOMAS PADOVANO's guilty plea to the charged offenses will likely result in THOMAS PADOVANO being subject to immigration proceedings and removal from the United States by making THOMAS PADOVANO deportable, excludable, or inadmissible, or ending THOMAS PADOVANO's naturalization. THOMAS PADOVANO understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. THOMAS PADOVANO wants and agrees to plead guilty to the charged offenses regardless of any immigration consequences of this plea, even if this plea will cause THOMAS PADOVANO's removal from the United States. THOMAS PADOVANO understands that THOMAS PADOVANO is bound by this guilty plea regardless of any immigration consequences. Accordingly, THOMAS PADOVANO waives any right to challenge the guilty plea, sentence, or both based on any immigration consequences. THOMAS PADOVANO also agrees not to seek to withdraw this guilty plea, or to file a direct appeal, or any kind of collateral attack challenging the guilty plea, conviction, or sentence, based on any immigration consequences of the guilty plea or sentence.

Other Provisions

This agreement is limited to the United States Attorney's Office for the District of New Jersey and the United States Department of Justice, Money Laundering and Asset Recovery Section, and cannot bind other federal, state, or local authorities. If requested to do so, however, the Government will bring this agreement to the attention of other prosecuting offices.

This agreement was reached without regard to any civil or administrative matters that may be pending or commenced in the future against THOMAS PADOVANO. So this agreement does not prohibit the United States, any agency thereof (including the Internal Revenue Service and Immigration and Customs Enforcement) or any third party from initiating or prosecuting any civil or administrative proceeding against him.

*[Continued on the next page.]*

## No Other Promises

This agreement constitutes the entire plea agreement between THOMAS PADOVANO and the Government and supersedes any previous agreements between them. No additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties.

Very truly yours,

PHILIP R. SELLINGER
United States Attorney

By: Sammi Malek
Assistant U.S. Attorney

/s/ Stephen Sola

By:  Stephen Sola
Chief, Money Laundering and
Forfeiture Unit
Money Laundering and Asset Recovery
Section
U.S. Department of Justice

APPROVED:

Elaine K. Lou
Deputy Chief, Criminal Division
United States Attorney's Office
District of New Jersey

Margaret A. Moeser
Chief
Money Laundering and Asset Recovery
Section
U.S. Department of Justice

- 11 -

I have received this letter from my attorneys Michael Baldassare, Esq. and Charles Kennedy, Esq. I have read it. My attorneys and I have reviewed and discussed it and all of its provisions, including those addressing the charges, sentencing, stipulations (including the attached Schedule A), waiver, forfeiture, and immigration consequences. I understand that this plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), and I accept those terms. I understand this letter fully and am satisfied with my counsel's explanations. I accept its terms and conditions and acknowledge that it constitutes the plea agreement between the parties. I understand that no additional promises, agreements, or conditions have been made or will be made unless set forth in writing and signed by the parties. I want to plead guilty pursuant to this plea agreement.

AGREED AND ACCEPTED:

Date: **12/13/2024**

_____
Thomas Padovano

I have reviewed and discussed with my client this plea agreement and all of its provisions, including those addressing the charges, sentencing, stipulations (including the attached Schedule A), waiver, forfeiture, and immigration consequences. My client understands that this plea agreement is made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), and my client accepts those terms. My client understands this plea agreement fully and wants to plead guilty pursuant to it.

Date: 12/13/24

_____
Michael Baldassare, Esq.
Charles Kennedy, Esq.
Counsel for Defendant

- 12 -

Plea Agreement with Thomas Padovano

Schedule A

1.      The Government and THOMAS PADOVANO agree to stipulate to the following facts:

        a.      From in or around January 2014 through in or around September 2020, in the District of New Jersey and elsewhere, THOMAS PADOVANO knowingly and intentionally conspired and agreed with others to distribute and possess with intent to distribute a mixture and substance containing a detectable amount of controlled substance analogues, as defined in 21 U.S.C. § 802(32), intended for human consumption, as provided in 21 U.S.C. § 813, and controlled substances (the "Narcotics Conspiracy").

        b.      The Narcotics Conspiracy involved the trafficking of: (i) more than 9 kilograms of a mixture and substance containing a detectible amount of 4-fluoroisobutyryl fentanyl (also known by names such as "4-FIBF," "FIBF," and "para-fluoroisobutyryl fentanyl"), a Schedule I controlled substance analogue until May 3, 2017, and a Schedule I controlled substance thereafter; (ii) more than 9 kilograms of a mixture and substance containing a detectible amount of furanyl fentanyl ("FUF"), a Schedule I controlled substance analogue until November 29, 2016, and a Schedule I controlled substance thereafter; (iii) a mixture and substance containing a detectible amount of methylone, a Schedule I controlled substance; (iv) a mixture and substance containing a detectible amount of 3,4-Methylenedioxymethamphetamine (also known by names such as "MDMA," "ecstasy," and "Molly") and its controlled substance analogues, all Schedule I controlled substances; and (v) a mixture and substance containing a detectible amount of ketamine, a Schedule III controlled substance.

        c.      From in or around January 2017 through in or around September 2019, in the District of New Jersey and elsewhere, THOMAS PADOVANO knowingly and intentionally conspired with others to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is, conspiracy to distribute and possess with intent to distribute controlled substance analogues intended for human consumption and controlled substances as alleged in Count One of the Third Superseding Indictment, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and knowing that the

- 13 -

property involved in the financial transactions represented the proceeds of some form of unlawful activity (the "Money Laundering Conspiracy").

   d.  The specified unlawful activity that was the object of the Money Laundering Conspiracy was the Narcotics Conspiracy.